## A04A0336. REDWINE v. MASTERS.
### (602 SE2d 143)

BARNES, Judge.

David Redwine appeals the judgment entered on a jury verdict for Fred Masters, granting Masters specific performance on a real estate contract, as well as $14,800 in damages and $5,669.40 in attorney fees, contending that the trial court erred in denying his motion for directed verdict. He argues that the contract between him and Masters did not have a sufficient description of the properties to be bought and traded, and that damages were inappropriate. We agree that the property description in the agreement was inadequate, and therefore we reverse the judgment as to the specific performance, damages and attorney fees.

Masters is a construction contractor who was building Redwine's house in Whitfield County. Redwine owned almost 50 acres of land, and had been buying more land steadily from the estate of Curtis Masters (no relation to Fred Masters). The decedent's three sons were selling off the land in ten-acre increments, one section each year, and they had orally agreed to let Redwine have the right of first refusal for any property they were willing to sell. Redwine had been acquiring contiguous property at this location since 1989, and wanted to buy all the land that the decedent's sons would sell him.

Masters was looking to buy about four or five acres in the area, having sold his forty-acre property elsewhere earlier that year to simplify his life. He had asked Redwine to sell him some of Redwine's property, but Redwine was not interested in selling or in having neighbors. One of the decedent's sons who lived on nearby property still owned by the estate approached Masters, asked if he still wanted to buy some land, and offered to sell him ten acres at $5,500 an acre, next to Redwine's property. They walked the general area of the plot, with the seller pointing at the two directions in which the plot would go until it made a square equaling ten acres. Masters met with this son and one of the decedent's other sons, who is the estate executor, and gave them a check for $25,000, almost half of the sales price.

Masters understood that the second half of the payment was due the following February, "for tax purposes."

A few days later, Masters told Redwine he had just bought the ten acres of property, which was visible across a pasture from what would be Redwine's dining room, and Redwine said he did not want anyone living there. Masters suggested that Redwine trade five acres located about a quarter mile away from the house for the ten acres Masters was buying, and the men drove over to the other property and then returned to the house. A surveyor arrived to meet with Masters, and instead of Masters hiring him to survey the ten acres next to Redwine's house, Masters hired him to survey the five-acre plot further away. Redwine later hired the surveyor to survey the ten acres next to his property.

Redwine wrote out an agreement that both men signed, which provided:

> This agreement is being made [and] finalized on Thursday Dec. 21, 2000. I agree to trade 5 acres of land behind Doris Masters to Fred Masters for 5 acres of land he owns beside my house at the property line. I also agree to purchase 5 acres of additional property from Fred Masters or Glenn Masters at the agreed price of 5,500.00 dollars an acre for a total of 27,500.00.

Redwine paid the three brothers for the second half of Masters' ten-acre purchase, and bought an additional ten acres from them. The surveyor subsequently delivered plats showing the twenty acres Redwine owned and the five acres Masters traded, and Redwine took the plats to a lawyer's office to have the deeds prepared. Redwine picked up all the deeds when they were ready, and had the brothers sign the two deeds for his twenty acres (five acres were put in his name and fifteen were put in his wife's name), which he then had notarized and filed in the courthouse.

Masters had been working nights and weekends on his five acres, clearing and grading the land, and eventually called Redwine about his deed. Redwine said he was going to buy that land back from Masters, and Masters said no, "I'm going to build a house over there. I just need you to sign my deed." Redwine lost his temper, so Masters hung up on him. A few days later Redwine came to the job site and fired Masters. Redwine said he had figured out that Masters had not paid for the ten acres he said he owned when they made their deal, and that Masters had lied and conned him to obtain the five acres that Redwine had already refused to sell him despite repeated requests.

Masters testified that if he had gotten the deed in January 2001, he could have built a house and moved in by May of that year, instead

of continuing to rent at $950 a month. He also testified that, as a custom carpenter, he had a lot of equipment which he had planned to put into a shop on his property, but had been storing at a cost of $150 a month. His attorney stated in his place that the bills admitted into evidence were his fees in the case at an hourly rate comparable to those normally charged in the Dalton marketplace.

1. Redwine argues that the trial court erred in admitting the surveyor's plats and other evidence describing the properties that did not exist when he and Masters made their agreement. The trial court further erred in denying his motion for a directed verdict, he argues, because the agreement did not contain a sufficient description of the properties to be traded and was therefore unenforceable.

The standard of review upon the denial of a motion for directed verdict is the "any evidence" test. *Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. 455, 456 (2) (496 SE2d 546) (1998). "The question before this court is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded." (Citations and punctuation omitted.) Id. "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a).

Therefore, we consider whether a contrary judgment regarding the grant of specific performance to Masters is demanded by the evidence. To be valid, a description in a contract for the sale of land must identify the land with reasonable definiteness or contain a key, the use of which leads to a description in extrinsic evidence. *Scheinfeld v. Murray*, 267 Ga. 622, 623 (1) (481 SE2d 194) (1997). In this case, it is clear that an adequate description of the property cannot be found within the four corners of the contract, which provides nothing more than the vague description "5 acres behind Doris Masters" for "5 acres of land he owns beside my house at the property line." The contract does not make reference to an existing deed or survey or any other key that would lead to a more exact description; instead, the metes and bounds of the property to be conveyed to Masters

> were to be determined by a survey to be conducted at [Master's] expense after the contract was executed. Although a contract which contains a valid description of the property may rely on a subsequent survey to determine the exact acreage, a post-contract survey cannot be used to provide the description itself. This is so because the key relied upon must be sufficient to provide identification by reference to extrinsic

evidence which exists at the time that the contract is entered into by the parties.

(Punctuation and footnotes omitted.) *Gateway Family Worship Centers v. H.O.P.E. Foundation Ministries*, 244 Ga. App. 286, 288 (2) (535 SE2d 286) (2000); see also *McMichael Realty & Ins. Agency v. Tysinger*, 155 Ga. App. 131 (270 SE2d 88) (1980).

Because a decree for specific performance operates as a deed (OCGA § 9-11-70), the description in the contract should be as definite as that required for a deed. *Plantation Land Co. v. Bradshaw*, 232 Ga. 435, 438 (207 SE2d 49) (1974). "Where land is so vaguely described that the writing provides no key to its identification, specific performance will not be decreed. [Cit.]" *Scheinfeld v. Murray*, supra, 267 Ga. at 623 (1). Because the writing in this case contained only a vague description of the property to be traded, with no key to its identification, the trial court erred in denying Redwine's motion for a directed verdict.

2. Based on our holding in Division 1 that the contract was too vague to be enforced, the award of damages and attorney fees must also be reversed.

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JUNE 28, 2004 —
RECONSIDERATION DENIED JULY 15, 2004 — ■■■■■■■■■

*L. Stephen Kelehear*, for appellant.
*Rickie L. Brown*, for appellee.